FUJII JUNICHI SHOTEN, LTD., ET AL. *v*. UNITED STATES

No. 7690.—Invoices dated Yokohama, Japan, 1940.
Entered at Honolulu, T. H., May 28, 1940, etc.
Entry Nos. 3510; 600.

First Division, Appellate Term

(Decided March 22, 1949)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellants.
*David N. Edelstein*, Assistant Attorney General (*Howard L. Harawitz*, special attorney), for the appellee.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge:   The applications, listed in schedule "A", hereto attached and made a part hereof, for review of the decision of the trial court in reappraisement, involve the value of two shipments of a seasoning salt, known as "ajinomoto," exported from Japan on May 18 and August 16, 1940, respectively, and imported at Honolulu, T. H.   The merchandise in issue was packed in tins denominated on the invoices as "Small," "Medium," "Large," and "Giant" tins, and was appraised on the basis of United States value, which is defined in section 402 (e) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. 1940 ed. § 1402 (e)).

Before the court below and here the appellants have contended that at the time of exportation from Japan of the ajinomoto in ques-

tion there existed for alleged similar merchandise, a seasoning salt known as "ajinokagami," a foreign value within the meaning of section 402 (c) of the Tariff Act of 1930, as amended. The pertinent provisions of section 402 are set forth in the margin.[1]  Of course, if it were established that there was a foreign value for merchandise similar to that involved, ajinomoto, it would take precedence over the United States value thereof. (Section 402 (a), *supra*.)

The evidence offered in support of the appellants' contention consists of chemical analyses of samples of ajinomoto and ajinokagami, affidavits made by several persons with respect to the similarity between ajinomoto and ajinokagami as to use, form, color, taste, odor, and their competitive qualities and selling prices in Hawaii, as well as testimonial evidence and a stipulation, as set forth below.   There was no direct testimonial, documentary, or real evidence offered relating to the statutory elements of foreign value of ajinokagami, i. e., the market value or the price (at the time of exportation of the ajinomoto in question) at which ajinokagami was—

\* \* \*  freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported [i. e., Japan], in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

In lieu of offering direct evidence as to the statutory elements of foreign value, as defined by section 402 (c), *supra*, appellants offered

---

[1] SEC. 402. VALUE.

(a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

(4) In the case of an article with respect to which there is in effect under section 336 a rate of duty based upon the American selling price of a domestic article, then the American selling price of such article.

\*        \*        \*        \*        \*        \*        \*

(c)  FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\*        \*        \*        \*        \*        \*        \*

(e)  UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

the testimony of the United States appraiser at Los Angeles concerning appraisements made by him of importations of ajinokagami from Japan during the period between April 11 and November 1, 1940, on the basis of foreign value. In addition, counsel stipulated that a shipment from Japan on August 16, 1940, imported at Honolulu on August 27, 1940, had been appraised at the invoice prices, but the entry did not indicate that "any value other than either foreign value or export value" had been the basis of appraisement, the merchandise having been appraised as entered.

In the court below it was assumed for the purposes of decision that ajinomoto and ajinokagami were similar merchandise. Notwithstanding this, however, the trial court held that the evidence was insufficient to establish a foreign value for ajinokagami which would be applicable to the ajinomoto here in question.

The appellants' theory of the case is as follows: Necessarily implicit in the presumption of correctness attaching to the value found by the appraiser for the ajinomoto at bar was a finding that no foreign or export value, within the meaning of the statute, existed for either such or similar merchandise. Citing *United States* v. *Samuel S. Perry*, 13 Cust. Ct. 364, Reap. Dec. 6045, wherein it was said:

\* \* \* Section 501 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501) attaches a presumption of correctness to the appraised value which carries the effect that the appraiser found every fact to exist that was necessary to sustain his action. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 C. C. P. A. 146, C. A. D. 75. \* \* \*

If one finding necessarily entering into the return of value on the basis of United States value is shown to be erroneous, the presumption of correctness attaching to the return of value falls. Citing, *inter alia*, *Carey & Skinner, Inc.* v. *United States*, 12 Cust. Ct. 352, Reap. Dec. 5975, wherein it was said:

\* \* \* When the record in a case, as the one before us, discloses that the appraisement is based on a wrong or false premise its statutory presumption is destroyed.

It is contended that the presumption of correctness attaching to the appraised value of the ajinomoto at bar was destroyed when appellants proved that a similar article, ajinokagami, did exist and that it had a foreign value.

The bar to the application of this reasoning in the circumstances of this case lies in the type of proof offered to sustain appellants' contention. Assuming, as the trial court did, that the documentary and real evidence offered by the appellants established the existence in a physical sense of merchandise similar to ajinomoto, nevertheless, it has not been established by a preponderance in weight of evidence that that similar merchandise had a foreign or export value within the meaning of those terms as used.in the statute which would be appli-

cable to the merchandise at bar. Until this was done, the appellants had not made out a *prima facie* case which would overcome the presumption of correctness attaching to the appraisement of the ajinomoto at bar, nor had they established that the said appraisement was based upon a wrong or false premise.

Merely to prove the physical existence of similar merchandise is not sufficient to establish that the appraisement was based upon a wrong or false premise. There may have been some legal or factual reason why the value of that similar merchandise did not come within the requirements of the statute to establish its market value or price as a foreign or export value. There was no *evidence* offered as to the statutory elements of foreign value of ajinokagami. Instead, appellants relied upon the *presumption* of correctness attaching to the appraiser's return of value of the ajinokagami shipments. The effect of this was to raise a conflict of presumptions. On the one hand was the presumption of correctness attaching to the appraiser's returns of the ajinomoto at bar, which implicitly negatived the existence of a foreign or export value for similar merchandise. On the other hand was the presumption of correctness attaching to the appraiser's returns of ajinokagami, which were admittedly based upon foreign value.

Although the effects of these presumptions were in opposition, the presumptions themselves are of equal weight in law, both being derived from the same source, i. e., section 501 of the Tariff Act of 1930, reading as follows:

\* \* \* The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

It is obvious that where presumptions are equal in weight, and where there is no fact or circumstance independently established which would impair or destroy one, neither can overcome the other. The burden was on the plaintiffs below, appellants here, to establish their claim by a *preponderance* in weight of the evidence (including that which may be offered in lieu of evidence, e. g., presumptions), and on the record as made in this particular case the plaintiffs failed to meet that burden.

From a consideration of the record before us and for the reasons stated we find as facts:

1. That the merchandise at bar consists of two shipments of a seasoning salt, known as "ajinomoto," packed in tins denominated on the invoices as "Small," "Medium," "Large," and "Giant" tins, exported from Japan on May 18 and August 16, 1940, respectively, and imported at Honolulu, T. H.

2. That at the time of exportation of the said ajinomoto to the United States there was no market value or price at which such or

similar merchandise was freely offered for sale to all purchasers in the principal markets of Japan, in the usual wholesale quantities and in the ordinary course of trade, either for home consumption or for exportation to the United States.

3. That the price at which merchandise such as or similar to the imported ajinomoto was freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any was paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods, was the appraised value as to each item in question.

We therefore hold as matter of law that the proper basis of value of the ajinomoto at bar is United States value, as defined in section 402 (e) of the Tariff Act of 1930, as amended, and that such value as to each item involved in each case was the appraised value.

The decision of the trial court is therefore affirmed, and judgment will issue accordingly.